## AFFIDAVIT OF RICHARD F. ATWOOD

I, Richard Atwood, being duly sworn, hereby depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for search warrants authorizing the examination of electronic devices – cell phones – which are currently in law enforcement possession and described in Attachment A, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a United States Postal Inspector employed by the United States Postal Inspection Service (USPIS), Boston Division, Rhode Island Domicile and have been so employed since June 2016.

3. On November 17, 2021, I submitted an affidavit in support of an application for a search warrant, (See Exhibit A) and an Affidavit in support of Criminal Complaints against JUAN BAUTISTA ROSARIO SANDOVAL ("ROSARIO"), DURALLINE AZCONA RODRIGUEZ ("AZCONA RODRIGUEZ") and NAHUN MARTINEZ GUERRERO ("MARTINEZ GUERRERO"). (See Exhibit B). I hereby incorporate all background and facts from those Affidavits into this Affidavit and have attached those affidavits hereto.

4. Upon the execution of search warrants and subsequent arrests in this case, law enforcement officials seized three (3) cellular telephones identified below.

### IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. This affidavit is made in support of an application for search warrants seeking to seize evidence relating to the drug trafficking activities of ROSARIO SANDOVAL, AZCONA RODRIGUEZ and MARTINEZ GUERRERO from:

   a. An LG cell phone, black in color, IMEI: 356593096752591, serial number: 006VTKE0679229 (hereinafter referred to as "TARGET TELEPHONE 1");

   b. An Apple iPhone cell phone, unknown model, beige in color (hereinafter referred to as "TARGET TELEPHONE 2");

   c. A Samsung Galaxy A21, model no.: SM-A215U, IMEI: 352252555875781, serial no.: R9AR30GDDLJ black in color, (hereinafter referred to "TARGET TELEPHONE 3");

The cellular telephones are collectively referred to as the "TARGET TELEPHONES."

  6. The applied-for warrants would authorize the forensic examination of the TARGET TELEPHONES for the purpose of identifying electronically stored data particularly described in Attachment B, attached hereto and incorporated herein.

## PROBABLE CAUSE

  7. As set forth in Exhibits A and B, I believe ROSARIO SANDOVAL, AZCONA RODRIGUEZ and MARTINEZ GUERRERO and others are responsible for arranging the shipments of large amounts of controlled substances, to wit, cocaine, from individuals in Puerto Rico.  The controlled substances were sent to the District of Rhode Island and elsewhere for distribution.  As set forth more fully in Exhibits A and B, the USPIS has been and continues to investigate a September 18, 2021 robbery of a USPS Letter Carrier attempting to deliver a parcel that had been shipped from Puerto Rico to an address on Broad Street, in Providence, RI.

  8. The TARGET TELEPHONES were recovered from the arrests of ROSARIO SANDOVAL and MARTINEZ GUERRERO on November 17, 2021.  TARGET TELEPHONE 1 was found in ROSARIO SANDOVAL's pants pocket, while TARGET TELEPHONE 2 was found in the vehicle ROSARIO SANDOVAL was operating at the time of his arrest.  TARGET TELEPHONES 3 was found on MARTINEZ GUERRERO's person after he was arrested attempting to discard evidence, a trash bag containing the box and shipping contents that included coffee grounds and items smeared with a petroleum product.  I am aware through my

extensive experience that both the coffee grounds and petroleum products are routinely used by cocaine smugglers to mask the order of the drugs they ship.  I am aware that after the seizure and return of the package and related evidence to the USPIS office, a certified drug detection dog alerted on the packaging.

   9. Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

    a. Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher-level suppliers, as well as associates to process, package, and deliver the drugs and launder the drug proceeds.  Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their illegal activities in order to meet with co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

    b. Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs.  The aforementioned records are often maintained where drug traffickers have ready access to them, such as on their cell phones and other digital devices, and in their residences.

    c. Communications between people buying and selling drugs take place by telephone calls and messages, such as e-mail, text messages, and social media messaging applications, sent to and from cell phones and other digital devices.  This includes sending photos or videos of the drugs between the seller and the buyer, the negotiation of price, and discussion of whether or not participants will bring weapons to a deal.  In addition, it is common for people engaged in drug trafficking to have photos and videos on their cell phones of drugs they or others working with them possess, as they frequently send these photos to each other and

others to boast about the drugs or facilitate drug sales. I know that in this case, members of the conspiracy were using their cellular devices to carry out the drug conspiracy. For example, after the robbery and assault of the letter carrier had been completed, investigators located a cellular telephone that had been dropped by ROSARIO. That device was found to contain images related to the stolen package. During his efforts to convince the letter carrier to relinquish the stolen package to him, ROSARIO displayed an image related to the package to the carrier that had been stored on his device. A drug conspiracy such as this requires timely, accurate communication. ROSARIO's use of his device to receive and store digital evidence related to the conspiracy supports my conclusion that probable cause exists to believe these devices contain evidence related to this drug conspiracy.

        d.      Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices and in their residence. Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices and in their residence, including in the form of calendar entries and location data.

        e.      Drug traffickers often use vehicles to transport their narcotics and may keep stashes of narcotics in their vehicles in the event of an unexpected opportunity to sell narcotics arises.

        f.      Drug traffickers often maintain on hand large amounts of United States currency in order to maintain and finance their ongoing drug trafficking businesses, which operate on a cash basis. Such currency is often stored in their residences and vehicles.

        g.      Drug traffickers often keep drugs in places where they have ready access and control, such as at their residence or in safes. They also often keep other items related to their drug trafficking activities at their residence, such as digital scales, packaging materials, and proceeds of drug trafficking. These items are often small enough to be easily hidden and thus

may be kept at a drug trafficker's residence even if the drug trafficker lives with others who may be unaware of his criminal activity.

        h.     It is common for drug traffickers to own multiple phones of varying sophistication and cost as a method to diversify communications between various customers and suppliers. These phones range from sophisticated smart phones using digital communications applications such as Facebook Messenger, WhatsApp, Snapchat and the like, to cheap, simple, and often prepaid flip phones, known colloquially as "drop phones," for actual voice communications.

        10.     The TARGET TELEPHONES are currently in the custody of the United States Postal Inspection Service, 24 Corliss Street, Providence, RI 02904. A description of these cellular telephones is attached hereto as Attachment A, which is incorporated herein by reference. While the United States Postal Inspection Service might already have all necessary authority to examine the TARGET TELEPHONES, I seek this additional warrant out of an abundance of caution to be certain that an examination of the TARGET TELEPHONES will comply with the Fourth Amendment and other applicable laws.

        11.     In my training and experience, I know that the TARGET TELEPHONES have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the TARGET TELEPHONES first came into the possession of the United States Postal Inspection Service.

        12.     The statements contained in this affidavit are based upon my own investigation, training and experience, and upon information and reports supplied to me by other law enforcement officers who are involved in this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrants and does not purport to set forth all of my knowledge of or investigation into this matter.

**TECHNICAL TERMS**

13.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.      Cellular telephone:  A cellular telephone (or mobile telephone, or wireless telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, cellular telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

   c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

   d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

   e.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

14. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.samsung.com/us/ and https://www.apple.com/, I know that the cellular telephones have capabilities that allow them to serve as a cellular telephone, digital camera, and portable media player. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE & FORENSIC ANALYSIS

15. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

16. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate electronically stored information as well as forensic evidence that establishes how the TARGET TELEPHONES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET TELEPHONES because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a cellular telephone is evidence may depend on other information stored on the cellular telephone and the application of knowledge about how a cellular telephone behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrants.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

17. *Nature of examination*:  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit the examination of the TARGET TELEPHONES consistent with the warrants.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrants.

18. *Manner of execution*:  Because these warrants seek only permission to examine devices already in law enforcement's possession, the execution of these warrants does not

involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrants at any time in the day or night.

## CONCLUSION

19.  Based upon the facts set forth above, I believe that there is probable cause to believe that the TARGET TELEPHONES, as described in Attachment A, contain evidence of drug trafficking activities, specifically, possession with intent to distribute and/or distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1); conspiracy to possess with intent to distribute and/or to distribute controlled substances, in violation of 21 U.S.C. § 846; and using a communication facility to commit, cause or facilitate the commission of a drug felony, in violation of 21 U.S.C. § 843(b). As described above and in Attachment B, this application seeks permission to search and seize things that the TARGET TELEPHONES might contain relating to the drug trafficking activities of ROSARIO SANDOVAL, AZCONA RODRIGUEZ and MARTINEZ GUERRERO and others yet identified, in whatever form they are stored. For all of the foregoing reasons, I respectfully request that this Court issue the requested search warrants.

20.  I, Richard F. Atwood, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

I declare that the foregoing is true and correct.

RICHARD F. ATWOOD
U.S. Postal Inspector

US Postal Inspection Service

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____.
*(specify reliable electronic means)*

_____       _____
         *Date*                                                          *Judge's signature*

Providence, Rhode Island          _____
    *City and State*              *Patricia A. Sullivan, U.S. Magistrate Judge*

11

## ATTACHMENT A

(Description of Property to be searched)

The property to be searched is:

    a.    An LG cell phone, black in color, IMEI: 356593096752591, serial number: 006VTKE0679229 (hereinafter referred to as "TARGET TELEPHONE 1");

    b.    An Apple iPhone cell phone, unknown model, beige in color (hereinafter referred to as "TARGET TELEPHONE 2");

    c.    A Samsung Galaxy A21, model no.: SM-A215U, IMEI: 352252555875781, serial no.: R9AR30GDDLJ black in color, (hereinafter referred to "TARGET TELEPHONE 3").

The TARGET TELEPHONES are currently in the custody of the United States Postal Inspection Service, 24 Corliss Street, Providence, RI 02904.

These warrants authorize the forensic examination of the TARGET TELEPHONES for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

(Items to be seized)

Evidence or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 846, and/or 843(b), including, without limitation, records relating to:

### Electronic Evidence

1. Call logs;

2. Address books, contact names;

3. Text messages, SMS messages, MMS messages, WhatsApp messages, emails or other communication forms among associates, including but not limited to ROSARIO SANDOVAL, AZCONA RODRIGUEZ and MARTINEZ GUERRERO;

4. Text messages and emails or other communication forms among ROSARIO SANDOVAL, AZCONA RODRIGUEZ and MARTINEZ GUERRERO's family and friends concerning their whereabouts;

5. Evidence of user attribution showing who used or owned the TARGET TELEPHONES at the time the things described in these warrants were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords and browsing history, and documents;

6. Internet searches and history;

7. Photographs or video of the Defendant and others unknown, to include any metadata showing the GPS coordinates where the photographs or video images were created; and

8. Photographs of parcels, parcel receipts and tracking information, redelivery slips, and/or images of controlled substances.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.